UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JONAS PEREZ GAMAS,<br><br>    Plaintiff,<br><br>V.<br><br>DIVISION 4 CONSTRUCTION LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 5:19-cv-00337-GFVT-MAS<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This case arises from a dispute over payment for work performed by Plaintiff Jonas Perez Gamas on a construction project. Pending before the Court is Plaintiff's Motion for Partial Summary Judgment. [R. 17.] For the reasons stated below, Plaintiff's Motion is **DENIED**.

**I**

In May 2017, the Madison County Board of Education entered into a contract with Redlee Construction to construct a new school in Madison County, Kentucky. [*See* R. 20 at 2; R. 20-2.] That same month, Redlee then entered into a Subcontractor Agreement with Luna Masonry to complete the masonry aspects of the construction. [R. 20-2 at 11–12.] From this point, the record regarding the relationships of the various parties involved is either unclear or in dispute.

Defendant Division 4 Construction LLC contends that, after entering into the Subcontractor Agreement, Luna Masonry entered into an agreement with Valente Avila Dominguez, a professional mason, to provide some of the masonry services at the construction site. [R. 20 at 2 (citing the affidavit of Rufino Gil, the sole member of Division 4, at R. 20-1).]

As part of this agreement, Division 4 represents that Mr. Dominguez negotiated an hourly rate for himself and other individual workers, including the Plaintiff, Mr. Gamas. *Id.* (citing R. 20-1). So, according to Division 4, Redlee subcontracted with Luna Masonry, who then made an agreement with Mr. Dominguez to perform the actual masonry work.

This is where Division 4 comes in. Division 4 represents that, following the agreement with Mr. Dominguez, Luna Masonry assigned its rights and obligations under the Subcontractor Agreement to Division 4. [*See id.* (citing R. 20-1).] Consistent with this timeline, Division 4 states that Mr. Dominguez had already negotiated the terms of his arrangement with Luna Masonry when the Subcontract was assigned to Division 4 and that "it was Division 4's understanding that Mr. Dominguez was an independent contractor and, in all aspects, in charge of his workers." *Id.* (citing R. 20-1).

For his part, Mr. Gamas does not expressly dispute the order of events related to the various agreements and sub-agreements. He does contend, however, that he and Mr. Dominguez were employees of Division 4 following the assignment—not independent contractors as Division 4 contends. [R. 17 at 2.]

Now, the Court turns to the allegations that gave rise to this case. Mr. Gamas states that his employment with Division 4 lasted from April 2018 to July 2018 and that, over the course of the employment, Division 4 failed to pay him for a significant number of hours that he worked on the school construction job. *Id.* at 3. Gamas represents that after repeated failures by Division 4 to pay him and others, he quit during the summer of 2018. *Id.* Approximately a year later, on July 19, 2019, Mr. Gamas filed suit in Madison County Circuit Court, bringing multiple claims against Division 4. [R. 1-2.] Division 4 removed to federal court on August 21, 2019, pursuant to federal question jurisdiction. [R. 1 at 2.]

Now, Mr. Gamas moves for partial summary judgment on Counts I and II of his Complaint, which set forth claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 (Count I) and the Kentucky Wage and Hour Act, KRS §§ 337.010 (Count II). [R. 17.] Division 4 responded in opposition to this motion, arguing that there are genuine disputes of material fact as to Counts I and II. [R. 20 at 1.] Mr. Gamas failed to file a reply.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*,

285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Here, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

Generally, the protections of both the Fair Labor Standards Act (FLSA) and the Kentucky Wage and Hour Act (KWHA) extend only to employees, not independent contractors. *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 610 (6th Cir. 2017); *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). So, while Mr. Gamas moves for summary judgment on two claims—one federal and one state—both require resolution of the same threshold issue: whether Mr. Gamas was an employee of Division 4 or simply an independent contractor.

This established, "employee" is defined differently under the respective statutes and, naturally, the analyses under the respective statutes on this issue are different. *See In re Amazon.com, Inc.*, 852 F.3d at 610–11 (citation omitted). But in his motion, Mr. Gamas has only cited standards in support of his argument that he is an employee as defined by the FLSA. [*See*

4

R. 17 at 21 (moving for summary judgment on his KWHA claims but failing to address whether he is properly defined as an employee under the state statute).] Accordingly, the Court will deny his motion for summary judgment as to Count II for failure to address this threshold issue. *Hall Holding*, 285 F.3d at 424. The remainder of the analysis will address only Mr. Gamas' FLSA claims, as set forth in Count I.

### 1

As stated, a worker must fall within the FLSA's definition of "employee" to be entitled to protections under the Act. Under the FLSA, an employee is any individual the employer "employs," which the Act defines as follows: "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(e)(1), (g). In applying this "strikingly broad" definition, courts look to whether a worker is "as a matter of 'economic reality,' an employee," even when that worker is labeled as an "independent contractor." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015) (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947)). Ordinarily, it is up to the court "to determine whether a company has inappropriately classified a worker as an independent contractor." *Id.* (citing *Werner v. Bell Family Med. Ctr., Inc.,* 529 F. App'x. 541, 543 (6th Cir. 2013)). But when there is a genuine dispute of material fact on this question, summary judgment is inappropriate. *Id.* (citation omitted). At that point, the trier of fact is to review the evidence and decide the question. *Id.*; *see also Lilley v. BTM Corp.*, 958 F.2d 746, 750 n. 1 (6th Cir. 1992).

Courts look to six main factors to determine whether a worker is an employee as a matter of economic reality:

 1) the permanency of the relationship between the parties;
2) the degree of skill required for the rendering of the services;
3) the worker's investment in equipment or materials for the task;

> 4) the worker's opportunity for profit or loss, depending upon his skill; . . .
>
> 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . .
>
> [6) ] whether the service rendered is an integral part of the alleged employer's business.

*Keller*, 781 F.3d at 807 (citing *Donovan v. Brandel*, 736 F.2d 1114, 1117, 1117 n. 5 (6th Cir. 1984). None of these factors are determinative. Notably, when weighing these factors, the central question is the extent of the worker's economic dependence on the business for which he is laboring. *Id.* (citation omitted).

Mr. Gamas argues that application of the factors to the facts of this case shows that he was a Division 4 employee, not an independent contractor. [R. 17 at 6.] Division 4 disagrees and argues Division 4 properly classified Mr. Gamas as an independent contractor. [R. 20 at 4, 7.] After consideration of the "economic reality" factors, and the evidence relied on by the parties to support their respective positions, the Court finds that genuine disputes of material fact exist on this issue and that Mr. Gamas is not entitled to summary judgment.

**2**

At this stage, extended analysis as to each factor is unnecessary based on the limited development of the record on this issue. To establish the extent and nature of the relationship between the parties, Mr. Gamas relies almost entirely on his own affidavit and the affidavit of Mr. Dominguez—who Division 4 contends is Mr. Gamas' brother-in-law. Of course, affidavits are admissible evidence. But, in the context of a motion for summary judgment, the Court is hesitant to find that no genuine dispute of material fact exists where a movant relies almost entirely on affidavits which, notably, are rebutted by contrary affidavits introduced by the non-movant.

Take, for example, the evidence introduced by Mr. Gamas on the first factor—the permanency of the relationship between the parties. On this factor, courts must look to "the length and regularity of the working relationship," while bearing in mind that "even short, exclusive relationships . . . may be indicative of an employee-relationship." *Keller*, 781 F.3d at 807 (citation omitted). Here, Mr. Gamas contends that he "worked exclusively on Division 4's construction job, and Division 4 told him when and how long to work." [R. 17 at 7 (citing his own affidavit, at R. 17-1 at ¶¶ 23–24 ("[T]he company (through Rufino Gil Majia) told me where to work, how many days a week to work, and how many hours to work each day.").] If true, this contention would cut squarely in Mr. Gamas' favor on this factor and, ultimately, indicate he was an employee of Division 4. But in response to this contention, Division 4 states as follows: "Division 4 did not control when or for how long Mr. Dominguez and his team worked on the project, outside of the hours of reimbursement for which they sought reimbursement. . . . Division 4 merely contracted with Mr. Dominguez, and thereafter allowed him and his team to go about the project as he saw fit." [R. 20 at 3 (citing Rufino Gil's affidavit, at R. 20-1 at ¶¶ 4, 8, 12, 16.] Outside of the respective affidavits, the parties do not rely on any other evidence to support these contentions. The Court declines to simply choose between the sworn affidavits in order to resolve this issue.

And the parties' arguments on the remainder of the factors present similar difficulties. For example, on the third factor—the worker's investment in equipment or materials for the task—Mr. Gamas again relies entirely on his own affidavit. [R. 17 at 10.] Here, he argues that "Division 4 provided all the tools for Gamas and the rest of the team . . . [and] also provided all the materials, primarily bricks and mortar." *Id.* (citing R. 17-1 at ¶ 25). Again, if true this would cut in favor of a finding that Mr. Gamas was an employee. But, once again, Division 4 disagrees

7

completely on this point. Division 4, also relying on an affidavit, argues simply that "Division 4 did not provide the tools that Plaintiff alleges it provided." [R. 20 at 14 (citing R. 20-1 at ¶¶ 13–14.] Like the first factor, the Court declines to simply choose between the sworn affidavits in order to resolve the factual disagreement. Analysis on the remainder of the factors is similarly futile at this stage. [*Compare* R. 17 at 12 (citing Mr. Gamas' affidavit, at R. 17-1) ("Division 4's employee, Rufino Mejia, supervised Gamas and the rest of the masons' conduct day-to-day"), *with* R. 20 at 10 (citing Rufino Gil's affidavit, at R. 20-1) ("Division 4 did not supervise or evaluate Plaintiff's ongoing performance.").]

In sum, Mr. Gamas and Division 4 have introduced directly contradictory evidence on the threshold issue of whether Mr. Gamas was an employee as defined by the FLSA. Given the nature of the evidence relied on, the Court is unable to resolve these factual disagreements and any attempt to do so would necessarily involve speculation and conjecture. Accordingly, the Court finds there are genuine disputes of material fact on this threshold issue such that summary judgment on Count I is plainly inappropriate.

C

Lastly, the Court will address a legal issue raised by Division 4 in its response. In Count II, as part of his claims under the Kentucky Wage and Hour Act (KWHA), Mr. Gamas requests the Court assess civil penalties against Division 4 pursuant to KRS § 337.990 in the total amount of $3,000. [R. 1-2 at 8, 9.] Division 4 argues that this portion of Count II should be dismissed as "a plaintiff has no standing to assert civil penalties against a company pursuant to [KRS] § 337.990." [R. 20 at 22.] The Court agrees. "Pursuant to KRS 336.985, only the Secretary of the Labor Cabinet may enforce the civil penalties in KRS 337.990 against an employer[.]" *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1186 (E.D. Ky. 2016). As a matter of law,

8

Mr. Gamas, as a private party, has no standing to pursue civil penalties pursuant to this portion of the KWHA. *See id.* Consequently, this portion of Mr. Gamas' claim must be dismissed.

### III

Mr. Gamas has failed to establish the absence of a genuine dispute of material fact as it relates to his claims under the FLSA or the KWHA. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment **[R. 17]** is **DENIED**; and

2. The portion of Plaintiff's Count II which requests the Court assess civil penalties against Defendant pursuant to KRS § 337.990 is **DISMISSED**.

This the 16th day of September, 2020.

Gregory F. Van Tatenhove
United States District Judge